Apologize for the late start. A little snow and traffic. First case this morning is Griffin v. Teamcare et al. Dr. Griffin? My name is W.A. Griffin, both appellant and self-represented party. May I appease the court? The district court simply got it all wrong when it's holding that Dr. Griffin's claim for benefits under ERISA 502A1B was not valid because she failed to cite specific plan provisions from the Teamcare plan documents in the complaint. The case in itself is kind of a real head-scratcher because I don't know if the court was on coffee break when my case was briefed or maybe the judges are busy and sometimes if you pro se they just don't have as much time to put into the cases. But the bottom line is the record on the docket is not supported by the district court's opinion. For example, in the plaintiff's opposition motion to the defendant's motion to dismiss, there were at least five different paragraphs in that complaint that expressly talked about the usual customary reasonable benefit level. The plan is required to reimburse providers based on a UCR methodology. And that was the hallmark of the whole appeal. And so that was mentioned at least five times in the complaint. And in addition to that, on the court docket, part of the complaint exhibit is a first level appeal. And that appeal expressly states that section 11.09 from Teamcare's very own plan was one of the reasons why we submitted the appeal. Dr. Griffin, was that appeal identifying the provision attached to your complaint or is that something that you attached in your response to the motion to dismiss? That first level appeal is actually part of the complaint exhibit. That's probably exhibit A. And so in that exhibit, it expressly states that particular provision. And from my understanding, I'm not a lawyer, but anything that you put in that exhibit, that's kind of part of the whole process. So I'm not sure where all this is coming from. But the bottom line is that there were, again, several remarks in the complaint about the user-customer reasonable benefit level. And I even went into that in the first level appeal. And even yet, Teamcare did respond five months later to my appeal. And the only plan provision they mentioned was 11.09, which was the very one that I mentioned. So I think there's just some misconceptions here. Like I said, I know that the courts are busy and they have a lot of cases. So sometimes things just get missed. But in and of itself, the hallmark of that particular case, the hallmark that the defendants used was a case called LB Surgery v. United Parcel Service. That case was used as a platform to dismiss my case. And that was basically some surgeons that sued UPS for benefits under the same claim that I have. And it was basically coming out of the same district court, same judge. And basically those provider claims were dismissed because the providers failed to state specific plan provisions. Now in that particular case, yeah, they did not state specific plan provisions, which is different from my case. But now that we're talking about LB Surgery, we need to address the fact that there's a lot of talk on different circuits about this particular issue of whether or not a provider needs to have a specific plan provision when they bring claims under 502A1B. And there's a lot going on with that. And my honest feeling is that these are just plan administrators like Team Care and Blue Cross and all of these insurers. They're just trying to figure out a way to block provider 502A1B claims. And so pulling things out of their hat like this is just one of the many tactics that they use. And so the Fifth Circuit actually addressed this very, very issue in Inova Hospital San Antonio versus Blue Cross. That was a really, really good case where the Fifth Circuit kind of sided with the providers in hospitals and expressly stated that a provider does not need to cite specific plan provisions in order to escape dismissal under Rule 11B. And the court went into great detail in that particular complaint talking about how often providers don't have the documents. And in that particular case, they actually asked for the documents. You didn't get the documents. They went to court, still didn't get the documents. And when they did get the documents, they got them after the plaintiffs in that case had missed the deadline to file an amended complaint. Now, so the court expressly said that given the circumstances, plan administrators holding on to documents, all kinds of violations, they shouldn't hold us accountable like that. And I hope that this honorable circuit would follow the Fifth Circuit in that regard. Now, granted defendants' team care, they were much better than most of them. They did hand over some documents. Five months later now, supposed to be 30 days, but they did hand over some of them, not all of them. And so, again, five months, you got bills to pay, rent to pay. We can't tell the landlord, you know, let's hold off for five months. So there are some issues that need to be addressed here. And so I feel like the honorable Seventh Circuit can set the record straight with that regard. Number two, the district court dismissed my breaches of fiduciary claim 502A3. Basically saying that I duplicated the claim for benefits was a duplicate of my breaches of fiduciary duty claim, which- Doctor, in that claim, are you seeking anything other than money damages? Are you seeking any kind of, under the law, what's called equitable relief? Well, I'm seeking a lot of equitable relief here. Under count two in particular, Doctor, what are you seeking? Under count two, I would just like for these plan administrators to be compliant with ERISA claim and appeal regulations. It's in black and white what the laws are. For example, part of one of the claim appeal standards in their very own plan documents is that they would answer appeals within 30 days. That's an appeal and claim regulation in their very own plan document. Five months later, this doesn't quite get it. So part of an equitable relief would be for them to answer the claims within 30 days, the appeals. That would be one thing they can do. Also, one other thing they can do is- You're going into your rebuttal time very rapidly. You want to save two minutes? Oh, yeah, I'll save two minutes. Sorry about that. Thank you. Mr. Carey. Good morning, Your Honors. Francis Carey for Central State. Good morning, Dr. Griffiths. I think that the crux of this case, respectfully, is Dr. Griffiths has it wrong. When you look at her bills, the district court stated that what Dr. Griffiths is really seeking in this complaint, and Judge Gettleman said she wants full bill charges in violation of Section 502A1B. Essentially, what Dr. Griffiths wants is full payment of her bills. She conflates, I think, her idea of full payment with the reasonable and customary allowances that are allowed under Central State's plan. Basically, when the district court analyzed Dr. Griffiths' complaint, the district court looked at her complaint, saw that she was seeking full bill charges. She billed around $7,000 or $8,000. I know she had bills to pay, but Central State did, in fact, pay about $2,000. There was the explanation of benefits showing the breakdown of the bills. When the district court saw that she was billing the full bill amount, wants the full bill amount, the obvious question that the district court had to address was, is there something in the plan document that gives Dr. Griffiths a right to a full bill amount? I think what she's looking for in this case is a decision by this court that says when an out-of-network provider who has not negotiated rates with Blue Cross, who does Central State, that if she bills a certain amount of money, she has a right to payment for that money. Dr. Griffiths told you that she filed an appeal. Indeed, she filed an appeal. Central State, she did the treatment for this covered participant on January 10, 2017. Central State paid her bill, I think it was on February 3, 2013. They sent out an explanation of benefits showing that Central State couldn't pay the full billed amount because her claim would be subject to deductibles. It would be subject to reasonable and customary allowance in Section 11.09 of the plan for all out-of-network providers. It would be subject to a 10% penalty because she went out-of-network. Some of the charges on the bill were only covered under major medical expenses, which means that they only be paid at 80%. Why aren't those issues a fact? Why is that something that the district court can decide at the motion to dismiss stage? She's alleged, and she alleged in her complaint she was paid a specific amount. She alleged what she would bill, but she says she didn't get paid enough. Why isn't it an issue of fact as to how much she was entitled to be paid? You might be right that she's not entitled to more, but that's not what she's alleged. Well, respectfully, Your Honor, when you look at, I think it's Paragraph 10 of the complaint, she stated that she billed around $7,000 or $8,000, and she was only paid about $2,000. That was in her complaint. In her complaint also was a statement that prior to providing the services on January 10, 2017, she called TeamCare, and TeamCare told her orally, we're going to pay you at the reasonable and customary allowance. When she filed her appeal, she was paid on the 3rd of February. I think she filed the appeal around the 18th of February. Then she said, I was told, I was promised I would be paid a reasonable and customary allowance. Her complaint also cites a promise, so what Judge Gettleman was faced with, he was faced with the allegations in the complaint. He knew that Dr. Griffith was pro se, but he was faced with the allegations in the complaint where she's really saying, I'm not really suing. She says she's suing under 502A1B for benefits according to the terms provided by the plan, but she's really suing on these oral promises. But how can you determine that? Again, viewing the complaint in the light most favorable to the doctor, as we have to do, how can you determine that on the face of the complaint when she alleges she was due the reasonable and customary amount and she didn't get it? Well, I think that the district court determined that she had to do a specific plan provision because the district court had the question, what in the plan gave her anything more than the reasonable and customary amount? Why is that a pleading issue as opposed to a proof issue? Well, I think it's a pleading issue because Judge Gettleman was faced with a complaint that stated that she wanted full payment. She didn't want reasonable. I don't think she wanted reasonable and customary. I don't think she cares about a reasonable and customary amount, and I don't even think that she could have amended. She didn't ask to amend the complaint. I don't even think she could amend the complaint to seek anything more because the plan states that you're never going to get full payment of her bills, and that's what Judge Gettleman was faced with. His question had to be, if she's seeking full payment of her bills, what in Central State's plan gives her any right to full payment of the bills? Because clearly the plan and the explanation of benefits that was sent to her says you have all these things. How can a judge determine, though, what the plan clearly says at a motion to dismiss if it's not in the allegations? Well, I think it was. I think it was in the allegations. For one thing, the plan was before the court. It was attached as an exhibit. Was the whole thing. You didn't attach the fee schedule to the contract or Blue Cross Blue Shield? We did not because that has absolutely. What we gave Dr. Griffith, there's two questions. One would be the penalty issue on the documents that she got. When she filed her appeal, she said, give me this list of documents. Central State gave her the plan document, the entire plan document, and the summary plan description. The contract with Blue Cross Blue Shield would have nothing to do with this case. Blue Cross doesn't adjudicate claims or have any. They're not a fiduciary. They don't have authority to. What about the fee schedule? The fees, keep in mind, Your Honor, that she's not subject to a fee schedule with Blue Cross because she negotiated any fees with Blue Cross. She's an out-of-network provider. So if she was in-network, we wouldn't be here. There wouldn't be any issue on the payment of fees because her fees would have gone through Blue Cross. Blue Cross said, this is what we negotiate with our doctors and our network, and they pay it. Because she was out-of-network, Central State would use this data eyesight to determine a reasonable and customary allowance for her geographical area. And that's exactly what happened in this case when she appealed to Central State. How do you determine that? Data eyesight. I'm sorry, Your Honor, data eyesight is a business associate of Central State. No, I mean the customary fees. I know how I normally do it in different medical cases, but how do you do it in this case? Well, you look at the geographical area. Okay. How is that done? Was that done? That was done by data eyesight. They're the ones who determine the fees in this case. And Central State, when she didn't like the fee, when she said, I should have been paid more money. So you provided her what I said gave you then? Well, that's one of the issues in the case, Your Honor. We told her when she appealed. When she appealed in February, we said, I'll be at Central State and get to her appeal until August. But when Central State got to her appeal, we said go to data eyesight, discuss this with data eyesight, and negotiate with data eyesight. She didn't do that. The record shows that she refused to negotiate and discuss her fees with data eyesight. Shortly thereafter, she filed the original case in Georgia, essentially raising the same allegations. But again, if you need this information to determine what's reasonable and customary, if you need to look at data eyesight to make that determination and look at their documentation, how could the district court make that determination at a motion-to-dismiss stage? Well, I think, Judge, the answer to that is I'd have to come back and say that the district court was saying it wasn't the issue. She doesn't want reasonable and customary. I guess that's my answer. She's not really seeking reasonable and customary. She's seeking full payment of her bills, which she confuses with reasonable and customary. She's thinking that she would bill this $7,000 or so, and it should be paid. She says that that's a reasonable and customary amount, and Judge Gettleman saw that central state plan under Section 1109, which is all over the record, says we pay reasonable and customary. So Judge Gettleman had to think what is she citing that gives her a right to anything more than reasonable and customary amounts. She didn't ask to amend the complaint and come back and say, okay, let me try again. She didn't go through the appeals process. If she went through the appeals process, maybe at that point she could have submitted evidence to central states and say, okay, central states, here's why I think my bills are reasonable and customary. In the Atlanta area, doctors and dermatology charge this and that, or the other thing. She didn't do that. She deemed her appeals exhausted because central states didn't get to her appeal within 30 days in the regulations. She deemed her appeal to be exhausted, and she essentially went to court. Thank you, Your Honors. Thank you, Your Honors. You have about two minutes. Yes. The root of the issue here is that plan administrators like Team Care have no idea what's going on. That's the root of the problem. I can assure you they have no idea what UCR is. They have no idea what the real UCR values are. They don't have that information, but they theoretically should have that. And so that's the situation they're in. When I bill a claim, I don't go a penny above UCR, usual reasonable and customary benefit level. I subscribe to a provider. So are you arguing that the reasonable and customary amount is the full amount you pay? Yes. There are some doctors that say UCR is not enough. I'm going to, you know. So, yes, it is usual, reasonable, and customary, the amount that I was billed. How did you determine what the usual and customary fee was? I subscribe to the only transparent database in the country. It's called Fair Health Inc. That was implemented in New York by the Attorney General there for the very reason that we're having now. There are some discrepancies in what the real out-of-network fees are. So this organization provides usual and customary fees for all of the country? For the whole country, and you pay for it. And so I don't go a penny above that, which is fair to the patient. It's fair to me. But what's happening is the insurers want to price benefits at Medicare, Medicaid levels, and patients are paying private pay premiums. So they can't have their cake and eat it too, and then what they do is turn around and they get a bonus. So, for example, if I have a $1,000 claim and Blue Cross Low Ball is a claim and gives themselves a 50% bonus on how much they save, theoretically they've made more than me and I've sold a patient. So that's what's going on. Team care, I mean, it's going on all over the country. They just don't know what's going on within their plan administration, and they're actually the named plan administrators, and that's got to stop. Thank you very much. Thanks to all parties, and the case will be taken under advisement.